UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE EDWARD ANDREWS GROUP, INC.,

        Plaintiff,

  -v-                                              No. 04 Civ. 6731 (LTS)(AJP)

ADDRESSING SERVICES COMPANY, INC.,

        Defendant.

OPINION AND ORDER

APPEARANCES:

ROBINSON BROG LEINWAND GREENE     LITMAN, ASCHE & GIOIELLA, LLP
GENOVESE & GLUCK P.C.                 By: Richard M. Asche, Esq.
  By: David C. Burger, Esq.               45 Broadway, 30th Floor
1345 Avenue of the Americas              New York, NY 10006
New York, NY 10105

                                             *Attorneys for Defendant*

  *Attorneys for Plaintiff*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiff, The Edward Andrews Group, Inc. ("EAG" or "Plaintiff"), commenced this action against Defendant Addressing Services Company, Inc. ("ASCO" or "Defendant") for breach of a consulting contract (the "Agreement"), seeking liquidated damages, interest, and attorneys fees. Plaintiff now moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Defendant cross-moves to amend its answer pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction of this action under 28 U.S.C. 1332(a). The Court has considered thoroughly all the submissions related to this matter, and for the following reasons, both Defendant's cross-motion to amend its answer and Plaintiff's motion for partial summary judgment are granted.

## BACKGROUND

The following facts are undisputed except where characterized otherwise. Plaintiff EAG is a New York consulting corporation based in New York City (Compl. ¶ 1) and headed by President Timothy Brog ("Brog"). (Brog Aff. ¶ 1.) Defendant ASCO is a Connecticut corporation based in East Hartford, Connecticut, and managed by President Michael Rittlinger ("Rittlinger"). (Aff. in Opp'n to Pl.'s Mot. for Summ. J. ("Rittlinger Aff.") ¶ 2; Compl. ¶ 2.) ASCO specializes in direct mailings and marketing materials for its customers. (Rittlinger Aff. ¶ 4; Compl. ¶ 5.) In the latter half of 2003, Brog, acting as a consultant to ASCO, introduced Rittlinger to one of EAG's business contacts, Jeffrey Klein ("Klein"), and proposed a joint venture between the two. (Rittlinger Aff. ¶ 6; Compl. ¶ 6.) The proposal contemplated that Klein, a direct mail expert, would expand ASCO's operations to include first-party collection and mailing services, both of which had the potential to expand Defendant's business into new

markets.  (Rittlinger Aff. ¶ 6; Compl. ¶ 6.)  EAG and Klein, however, had a pre-existing non-circumvention agreement, under which Klein was required to either include EAG in any business venture to which EAG introduced Klein, or compensate EAG for its services.  (Rittlinger Aff. ¶ 7; Compl. ¶ 7.)

Following a series of meetings among Klein, EAG and ASCO, Klein approached Rittlinger and ASCO's counsel, Charlie Alfano ("Alfano"), individually to discuss excluding EAG from the proposed deal.  (Rittlinger Aff. ¶ 7; Compl. ¶ 9.)  Rittlinger and Alfano expressed concern that EAG would sue Klein for breaching the non-circumvention contract; Rittlinger eventually agreed to approach Brog and negotiate a compensation agreement that would permit ASCO to do business with Klein.  (Rittlinger Aff. ¶ 8; Compl. ¶¶ 9-11.)  According to Rittlinger,

> The difficulty in negotiating such an agreement, however, was that it was impossible to value the business which the plaintiff was introducing to ASCO.  While all parties had high hopes for the business, there was no track record and no reliable way of knowing whether the business would succeed or fail, or, indeed, whether it had any value at all.

(Rittlinger Aff. ¶ 8.)

After several conversations between Brog and Rittlinger, the parties reached a consensus and executed the Agreement on January 13, 2004.  (Agreement, Compl. Ex. A.)  The Agreement allowed ASCO to work directly with Klein and exclude EAG from the joint venture, so long as ASCO compensated EAG for its role in introducing the parties.  (Id.)  The Agreement recited that EAG and ASCO had consulted on matters pertaining to the operation and expansion of ASCO's mailing business, and that ASCO "desire[d] to compensate [EAG] for its valuable and beneficial services provided to [ASCO] up to the date hereof, over a five (5) year period for services already provided and completed and to resolve the dispute over [EAG]'s rights to

participate in" the ASCO/Klein arrangement. (Id. at 1.) It required Defendant to pay Plaintiff $8,300.00 on the first of each month, over a period of 60 months, for total compensation of $498,000.00. (Id. ¶ 1.) Installment payments were to be due on the first of every month. (Id.) The contract also permitted ASCO to suspend or terminate its payment obligations prior to the passage of 60 months:

> 3. <u>Suspension of the Agreement</u>. If, during the term of this Agreement, neither Jeffrey Klein nor any member of Jeffrey Klein's family (collectively, the "Klein Group") is directly or indirectly affiliated with Client [ASCO] and does not receive or accrue any form of compensation or consideration from Client during a period of ninety (90) days, thereafter the installment payments and the calculation of the term set forth above shall be suspended. Payments hereunder shall immediately resume in the event that the Klein Group begins to receive or accrue compensation or consideration of any kind or is again directly or indirectly affiliated with Client and shall be paid in successive months thereafter until Consultant [EAG] is paid in full.

(Id. ¶ 3.) It thus permitted Defendant to suspend or cease payments to Plaintiff in connection with the suspension or termination of Defendant's business arrangement with Klein.

The Agreement also included a default provision, under which the full remaining number of unpaid installments would accelerate upon Defendant's failure to make a timely payment, and failure to cure the payment default promptly upon notice:

> 6. <u>Failure to Pay</u>. If Client [ASCO] fails to make a payment for a particular month, Consultant [EAG] shall provide written notice of such failure. In the event that payment is not made within 10 days after such notice to Client, all remaining payments shall automatically be accelerated and become due and payable and not subject to Section 3 above.

(Id. ¶ 6.) Such acceleration was also called for in the event of a sale of ASCO, all of its assets or a controlling interest in the company. (Id. ¶ 13.) A merger clause specified that "with respect to the introduction of the Business Opportunity and the Klein Group to [ASCO], this Agreement

shall be deemed to express and embody and supercede all other previous understandings, agreements, commitments, either written or oral, between the parties hereto and to fully and finally set forth the entire agreement between the parties." (Id. ¶ 7.) A provision titled "Litigation" stipulated that, "[i]f any litigation is commenced as a result of this Agreement, the party most prevailing shall be entitled to, in addition to any and all other remedies at law, an award of its attorney's fees and expenses incurred in connection with such litigation." (Id. ¶ 10.) Paragraph 9 of the Agreement specified internal New York law as the law governing the contract and the parties' legal relations.

Prior to the execution of the Agreement, which Brog had drafted, Rittlinger consulted with a lawyer, who advised him that the default payment acceleration clause and certain other provisions were undesirable. Rittlinger discussed the objections with Brog, and then signed the agreement as originally drafted. (Rittlinger Aff. ¶¶ 11-13.)

Defendant asserts that, not long after Klein began working with ASCO in Spring 2004, it became clear that the deal with Klein was a "losing venture." (Rittlinger Dep., Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. Ex. C ("Rittlinger Dep.") 64:9-10, Apr. 15, 2005.) Defendant paid the first three monthly installments of $8,300.00 (Pl.'s Local Rule 56.1 Statement ("PR 56.1") ¶ 3; Def.'s Counter Statement Pursuant to Local Rule 56.1 ("DR 56.1") ¶ 3), but failed to pay the $8,300.00 installment that was due on June 1, 2004. (PR 56.1 ¶ 4; DR 56.1 ¶ 4.) Following this default, Plaintiff, in accordance with the terms of the Agreement, sent Defendant a "Default Notice" on or about June 8, 2004, granting Defendant ten (10) days to cure the default by tendering the June installment. (PR 56.1 ¶ 6; DR 56.1 ¶ 6.) ASCO did not tender payment within the 10-day cure period. (PR 56.1 ¶ 7; DR 56.1 ¶ 7.) On June 24, 2004, EAG sent ASCO a letter informing Defendant that under the terms of the Agreement, the balance of all

payments owed, $473,100.00, would be accelerated and immediately due. (Compl. ¶ 24.)

Rittlinger admits that he was unable to pay the monthly installments. (Rittlinger Dep. 66:8-12 ("I just couldn't, you know, pay this Consulting Agreement.").) Rittlinger, however, also alleges that during the spring and summer of 2004, he stayed in his Florida home to care for his wife, who was suffering from pregnancy-related health complications. (Rittlinger Aff. ¶ 16; Def.'s Additional Material Facts ("Def.'s Additional Facts") ¶ 3.) Although he tended to some business during this time, Rittlinger claims he was "substantially preoccupied with [this] personal matter." (Rittlinger Aff. ¶ 16.) He also claims that, as soon as he returned to Connecticut in August 2004, he sought to cure the default by tendering payments for August and September 2004, and promising to become current by October 2004. (Rittlinger Aff. ¶ 18; Def.'s Additional Facts ¶ 3.) Defendant proffers as evidence of the attempt to cure a check for $16,600.00, dated September 6, 2004. (Id.) Defendant alleges that Plaintiff rejected this payment and all of ASCO's cure attempts. (Id.)

Plaintiff filed its Complaint on August 18, 2004, asserting claims for breach of contract, <u>quantum</u> <u>meruit</u>, unjust enrichment and attorneys fees and costs. Plaintiff now moves for partial summary judgment as to the breach of contract claim only, seeking liquidated damages, interest and attorneys' fees.

## DISCUSSION

### Motion to Amend Answer

In its original answer, Defendant raised only one affirmative defense, alleging that Plaintiff had misrepresented the consideration in the Agreement and thus did

not provide "valuable or beneficial" services to Defendant. (Answer ¶ 43.) Defendant now moves to amend its answer to replace this defense with a new affirmative defense asserting that the Agreement's liquidated damages clause constitutes an unenforceable penalty under New York law. (Am. Answer ¶ 43.)

Leave to amend a party's pleading "shall be freely granted where justice so requires." Fed. R. Civ. P. 15(a) (West 2005). Unless the nonmoving party proffers evidence of "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party," a trial court should grant leave to amend. State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). When deciding whether to grant the amendment, "the trial court [is] required to take into account any prejudice that [the non-movant] would . . . suffer[] as a result." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971).

Plaintiff opposes Defendant's motion to amend its answer on two grounds: First, Plaintiff asserts that Defendant's new affirmative defense would be futile. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to Am. its Answer and in Further Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Reply") at 3.) Second, Plaintiff claims that Defendant's motion was made in bad faith or for dilatory purposes. (Id.) Because the merits of the defense have been briefed in connection with the summary judgment motion practice and Plaintiff has failed to demonstrate that it would be unduly prejudiced, or the litigation unduly delayed, by allowance of the amendment, Defendant's motion to amend its answer is granted. Defendant's answer is deemed amended to assert the penalty defense.

Motion for Summary Judgment

          Summary judgment shall be granted in favor of the moving party where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue as to any material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Furthermore, "[i]t is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (internal citations omitted). A nonmoving party cannot create a genuine issue of material fact, however, through "[c]onclusory allegations, conjecture, and speculation." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

*Breach of Contract*

          To succeed on a claim for breach of contract under New York law, a plaintiff must prove that (1) a contract existed; (2) it adequately performed under the contract; (3) the defendant breached the contract; and (4) damages attributable to the breach. See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). "The failure to tender payment is a material breach of a contract." Jafari v. Wally Findlay Galleries, 741 F. Supp. 64, 67 (S.D.N.Y. 1990).

          It is undisputed here that a contract existed between the parties (PR 56.1 ¶ 1; DR 56.1 ¶ 1), that Plaintiff adequately performed its obligations under the Agreement (indeed, the Agreement itself recites that its purposes were to compensate EAG for work done over the preceding five years and to resolve the parties' dispute over EAG's right to participate in the new

ASCO/Klein venture; Defendant proffers no evidence indicating that Plaintiff owes any outstanding performance under the Agreement), and that Defendant breached the Agreement by failing to make timely payments and failing to cure its default within the 10 day period provided for in the contract (PR 56.1 ¶¶ 4, 7; DR 56.1 ¶¶ 4, 7). Because a central aspect of the Agreement required Defendant to tender monthly installments of $8,300.00, Defendant's failure to pay constituted a material breach. See Jafari, 741 F. Supp. at 67.

*Accelerated Payments as Damages*

Defendant challenges the Agreement's accelerated payments provision as an unconscionable penalty, unenforceable under New York law, on several grounds. First, Defendant argues that the installment payments due under the contract are unreasonable because the payments were contingent upon the volume of direct mail produced by Klein. Second, Defendant asserts that honoring the acceleration clause would unfairly guarantee payments to Plaintiff that would not otherwise be guaranteed. Third, Defendant maintains that its failure to timely cure its default was a mere "trivial or inconsequential" breach of the Agreement, and that such a breach cannot not fairly serve as the basis for triggering acceleration of the entire debt. (Def.'s Mem. at 14 (citing Suits v. Suits, 698 N.Y.S.2d 203, 203 (N.Y. App. Div. 4th Dep't 1999)).) Lastly, Defendant cites Rittlinger's family medical problems as a circumstance warranting equitable relief mitigating the effect of the accelerated payment provisions. Each of these arguments is meritless. (Id. at 14-15.)

Under New York law, contracting parties have a right to stipulate liquidated damages for a breach of contract where the amount agreed to is "neither unconscionable nor contrary to public policy." Rattigan v. Commodore Int'l Ltd., 739 F. Supp. 167, 169 (S.D.N.Y.

1990).  An acceleration clause is one type of liquidated damages provision, which in its usual form requires a party who defaults on installment payments to pay the balance of the debt in one lump sum.  Parties frequently agree to acceleration clauses, and New York courts typically enforce such provisions according to their terms.  See, e.g., Rattigan, 739 F. Supp. 167 (finding plaintiff employee entitled to accelerated contract benefits following his involuntary resignation); Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc., 389 N.E.2d 113 (N.Y. 1979) (enforcing acceleration of remaining monthly rent due under 20-year lease where defendant willfully breached); Key Int'l Mfg. v. Stillman, 480 N.Y.S.2d 528 (N.Y. App. Div. 2d Dep't 1984) (allowing acceleration of a ten-year $2 million debt where plaintiff neglected to renew annual letters of credit per contract).  Cf. Tunnell Publ'g Co., Inc. v. Straus Commc'ns, Inc., 565 N.Y.S.2d 572 (N.Y. App. Div. 3d Dep't 1991) (denying acceleration of promissory note against corporate debtor on summary judgment where issue of material fact existed as to whether plaintiff creditor had sustained any injury).

Whether a liquidated damages provision is enforceable is a question of law.[1]  See Leasing Serv. Corp. v. Justice, 673 F.2d 70, 74 (2d Cir. 1982); Bigda v. Fischbach Corp., 849 F. Supp. 895, 902 (S.D.N.Y. 1994); JMD Holding Corp. v. Congress Fin. Corp., 828 N.E.2d 604, 609 (N.Y. 2005).  The burden lies with the party opposing liquidated damages — here ASCO —

---

[1] Defendant, citing Bell Atl. Tricon Leasing Corp. v. Pac. Contracting Corp., 703 F. Supp. 302 (S.D.N.Y. 1989) and First Interstate Leasing Serv. v. Bigham, No. 88 Civ. 2847(KM), 1988 WL 131312 (S.D.N.Y. Nov. 29, 1988), asserts that some courts have treated the enforceability of acceleration clauses as an issue of fact.  Defendant mischaracterizes those cases.  These summary judgment decisions did not treat the enforceability of liquidated damages clauses as an issue of fact; rather, summary judgment was denied because of the presence of genuine issues of fact that were material to the enforceability determination.  No such issues of fact preclude the grant of summary judgment here.

to proffer evidence that would allow a reasonable trier of fact to deny enforcement of the provision as unconscionable. JMD Holding Corp., 828 N.E.2d at 609.

New York courts will generally sustain a liquidated damages clause so long as the provision is neither a penalty nor a forfeiture, and equity should intervene to invalidate a liquidated damages clause only "in rare cases." Fifty States Mgmt. Corp., 389 N.E.2d at 116. The New York Court of Appeals in JMD Holding Corp. recently reiterated the criteria for determining whether a liquidated damages clause is an unenforceable penalty. The party challenging the liquidated damages provision must proffer sufficient facts to demonstrate that at the time of contracting (1) prospective actual damages "were readily ascertainable" or (2) damages agreed upon were "conspicuously disproportionate to . . . foreseeable losses." JMD Holding Corp., 828 N.E.2d at 609.[2] Another consideration is whether "the clause 'is intended by the parties to operate in lieu of performance . . . [or] a means to compel performance.'" Rattigan, 739 F. Supp. at 169 (quoting Brecher v. Laikin, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)). In the former instance, the court will enforce the acceleration clause because the non-breaching party's

---

[2] As part of its analysis, the New York Court of Appeals reaffirmed the "well established" test set forth in Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.:

> 'A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a <u>reasonable proportion to the probable loss</u> and the amount of <u>actual loss is incapable or difficult of precise estimation</u>. If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced.'

828 N.E.2d at 609 (emphasis added) (quoting Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 361 N.E.2d 1015, 1018 (N.Y. 1977) (citations omitted)).

damages are "no greater than the amount [the defendant] would have paid had it fully performed." Fifty States Mgmt. Corp., 389 N.E.2d at 116. In the latter, the court will find the clause to be an unenforceable penalty because the stipulated amount, typically much greater than the estimated actual loss, operates in terrorem, such that "[a] promisor would be compelled, out of fear of economic devastation, to continue performance."[3] Rattigan, 739 F. Supp. at 169.

Applying these principles here, Defendant's arguments and factual proffers are insufficient to defeat enforcement of the accelerated payment clause of the Agreement. ASCO has proffered no evidence that probable damages to EAG were "readily ascertainable" at the time of negotiations. Cf. JMD Holding Corp., 828 N.E.2d at 609. To the contrary, Rittlinger in his affidavit admitted that "it was impossible to value the business which the plaintiff was introducing to ASCO." (Rittlinger Aff. ¶ 8.)

Nor has ASCO raised a genuine factual issue as to whether acceleration of damages would be "conspicuously disproportionate" to EAG's probable losses. Cf. JMD

---

³ The Court must also be mindful of the nature of contract and the circumstances attendant to the parties' negotiations. See Howard Johnson Int'l v. HBS Family, Inc., No. 96 Civ. 7687(SS), 1998 WL 411334, at *6 (S.D.N.Y. July 22, 1998); JMD Holding Corp., 828 N.E.2d at 609. "Relevant here is whether the parties were sophisticated and represented by counsel, the contract was negotiated at arms-length between parties of equal bargaining power, and . . . that [the provision] was freely contracted to." Bigda v. Fischbach Corp., 849 F. Supp. at 902 (citing Rattigan, 739 F. Supp. at 170). In the instant case, although Brog apparently convinced Rittlinger to forgo changes to the Agreement suggested by ASCO's attorney, who had objected to the accelerated damages clause (Rittlinger Aff. ¶¶ 11-13), Defendant has not proffered any evidence from which a reasonable factfinder could determine that Rittlinger was too unsophisticated to understand the business transaction, that the parties had unequal bargaining power, or that Rittlinger's free will was unfairly overborne by Brog during negotiations. See Bigda, 849 F. Supp. at 902.

Holding Corp., 828 N.E.2d at 609. Defendant asserts that such disproportion is present because ASCO's payment obligations under the Agreement were meant to be conditional upon the success of the ASCO/Klein joint venture. This factual proffer is facially inconsistent with the payment provisions of the Agreement, which provided ASCO with the option of terminating both its relationship with Klein and its payment obligations to EAG but did not condition ASCO's payment obligations upon the results of the joint venture and, to the extent Defendant asserts it had an agreement with Brog that the payments would be conditional, is precluded by the merger clause in paragraph 7 of the Agreement and by paragraph 7's requirement that all amendments, modifications and additions to the Agreement be in writing and executed by the parties. Furthermore, although Defendant now asserts that the venture has proven unsuccessful, the Court must assess the reasonableness of liquidated damages at the time of contracting. Howard Johnson Int'l, 1998 WL 411334, at *6. Nothing in the record suggests that the parties believed that the venture would not be successful at the time it was entered into.

        Defendant also argues that, even if the Court does not interpret the monthly installment payments as contingent upon success, the acceleration clause still constitutes an unconscionable penalty because Plaintiff should have no right to receive 60 installments when Defendant had only worked with Klein for just over 20 months. (Def.'s Mem. at 9-11.) Analogizing to cases where courts have invalidated the acceleration of rent in tandem with eviction of a defaulting tenant, (id. at 9-10 (citing Ross Realty v. V&A Iron Fabricators, Inc., 787 N.Y.S.2d 602 (N.Y. App. Term 2004); Vanguard Commercial Leasing Corp. v. Dayanzadeh, 538 N.Y.S.2d 492 (2d Dep't

1989))), as well as to cases where the court refused to grant a non-breaching party unearned interest on a debt, (id. at 10-11 (citing Chaifetz v. Schreiber, No. 02-CV-2841(JG), 2003 WL 21738599 (E.D.N.Y. June 10, 2003))), Defendant suggests that Plaintiff is not entitled to damages for events that have yet to take place. Defendant's argument misapplies the case law and distorts the nature of the Agreement.

In ruling on the enforceability of liquidated damages, courts often consider whether "the consideration has been furnished" on the one hand, or alternatively, whether the breaching party is being asked to pay for a benefit it has never enjoyed. Fairfield Lease Corp. v. Marsi Dress Corp., 303 N.Y.S.2d 179, 181 (N.Y. Civ. Ct. 1969). Thus, in lease disputes, for example, a court will deem an acceleration clause to be a penalty where the breaching tenant must both tender the balance of rent installments and vacate the premises for the remainder of the lease term. Id. In such cases, the tenant would unfairly have to pay for a space it will no longer occupy. Id. Similarly, where a court awards liquidated damages, it will limit the prevailing party's recovery to accrued interest because unearned interest, by nature, has never accumulated on the debt. See Chaifetz, 2003 WL 21738599, at *2.

In the instant case, however, EAG furnished the requisite consideration to Defendant when it introduced Klein to ASCO and the two commenced their direct mail venture. When it demanded accelerated payments, EAG never insisted that ASCO cease collaborating with Klein. When they negotiated the contract, EAG and ASCO effectively set the full value of the consideration at $498,000.00 and designed a mechanism for ASCO to pay off the debt over the course of 60 months. ASCO retains the ability to work

with Klein if it chooses to do so, and the accelerated damages clause acts to secure payment "in lieu of performance" rather than a penalty acting to "compel performance." See Rattigan, 739 F. Supp. at 169.

Defendant further argues that, even assuming the accelerated damages clause is enforceable, its application here is unconscionable because Defendant committed a mere "trivial or inconsequential" breach by allowing the 10-day cure period to lapse. (Def.'s Mem. at 14.) This argument similarly fails. It is true that, where a plaintiff's basis for triggering an accelerated damages provision was the breach of a "trivial or inconsequential" contract provision, New York courts will decline enforcement of the acceleration clause. Tunnell Publ'g Co., Inc. v. Straus Commc'ns, Inc., 565 N.Y.S.2d 572, 574 (N.Y. App. Div. 3d Dep't 1991) (finding equity may invalidate accelerated damages where plaintiff creditor's claim to damages arose from defendant debtor's mere change of company name and business restructuring, thereby ignoring defendant's actual solvency and demonstrated ability to continue the contract). Defendant's failure to timely pay the June 2004 installment and subsequent failure to cure its default within 10 days were, however, neither trivial nor inconsequential. Rather, as previously explained, Defendant committed a material breach by defaulting on its monthly payments. See, e.g., Key Int'l Mfg., Inc. v. Stillman, 480 N.Y.S.2d 528, 531 (N.Y. App. Div. 2d Dep't 1984) (Where plaintiff's "obligation to make timely replacement of the letters of credit was an essential component of the agreement," plaintiff's breach could not "be viewed as trivial or inconsequential"). Furthermore, Defendant "blithely sat by and exacerbated the effects of its willful breach by purposely failing to tender the [installments] due the following month[s]." See Fifty States Mgmt. Corp., 389 N.E.2d at 117.

Lastly, Defendant argues that the 10-day cure period should have been tolled due to Rittlinger's wife's health problems, which allegedly made it difficult for him to cure ASCO's default within the cure period. (Def.'s Additional Facts ¶ 3; Rittlinger Aff. ¶ 16.) Even if such equitable amelioration were available under some circumstances in connection with the operation of a default provision, its invocation would be unwarranted here. Nothing in ASCO's factual proffer indicates that the health problems were the reason for the failure to pay or that they prevented Rittlinger or any of ASCO's other representatives from learning of the default and the cure demand. Rather, ASCO knowingly permitted the default to accrue, declined to cure it in time, and also failed to utilize the express contractual mechanism available to it for suspending its payment obligations to EAG. Equity does not warrant denial of EAG's contractual remedy under these circumstances. Indeed, "[i]t would be a perversion of equitable principles to relieve a party of the impact of its intentional default." See Fifty States Mgmt. Corp., 389 N.E.2d at 117.

CONCLUSION

For the foregoing reasons, Defendant's motion to amend its answer and Plaintiff's motion for partial summary judgment are granted.

Plaintiff shall file with the Court and serve on Defendant, within ten (10) days hereof, a statement of attorneys' fees sought for this action and expenses it seeks to recover pursuant to paragraph 10 of the Agreement. Any opposition to the fee and expense request shall be served and filed within ten (10) days after service of the request, and any reply papers shall be served and filed within five (5) days after service of the opposition papers.

Further, because Plaintiff stipulates that the remaining two claims asserted in its

Complaint, for <u>quantum meruit</u> and unjust enrichment, were tendered as alternative arguments and are based on the same set of facts as its breach of contract claim, Counts Three and Four of the Complaint will be dismissed with prejudice and without further notice unless an objection to such dismissal is filed and served within ten (10) days of the date hereof.

The final pre-trial conference in this matter, currently scheduled for December 2, 2005, at 2:00 p.m., is cancelled in light of the disposition of the instant motions.

SO ORDERED.

Dated: New York, New York
November 29, 2005

/s/ LAURA TAYLOR SWAIN
LAURA TAYLOR SWAIN
United States District Judge